IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CT-3082-BO

| | | |
|---|---|---|
| MELDON C. COLLINS, JR., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| DR. PAULA Y. SMITH, | ) | |
|     Defendant. | ) | |

Plaintiff is presently an inmate in the custody of the North Carolina Department of Correction ("NCDOC" or "DOC"). He has filed this civil rights action pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical condition against Dr. Paula Y. Smith. Defendant Smith is before the court with a motion for summary judgment. The matter is ripe for determination.

i.    Issues, Allegations, and Damages Sought

Plaintiff alleged that he injured his back in 2006. (Compl., IV. Statement of Claim, p. 4) He argues that because of rehabilitation therapy his the left side of his body shifted "26 degrees to the front." (Id.) Plaintiff asserts that he has been refused an MRI and surgery resulting in his being unable to stand or walk straight and has caused numbness in his legs and feet. (Id.) Plaintiff alleged that he has a five inch drop in his left shoulder which has not been corrected. (Id.) Plaintiff further alleged that he is forced to use a wheelchair and cane, that he has "not been given a back brace, Dr. 2 shoes or eggcrate to sleep on." (Id.) Plaintiff alleged that he has been denied adequate medical treatment from 2007 through 2009. (Id.) Plaintiff requested that the

court require DOC to give him an MRI and surgery.[1] (Id., V. Relief Sought By Prisoner, p. 5) Plaintiff also seeks $15 million in monetary damages for pain and inadequate medical care. (Id.)

i.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party who seeks summary judgment must first demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. "[T]here must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Id. The court may rely on the medical affidavits and prison medical records in ruling on a motion for summary judgment. See generally, Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998); Marshall v. Odom, 156 F.

---

[1] Plaintiff has received an MRI which was conducted in April 2009 and underwent surgery in late July or August of 2009. (Mem. in Supp. of Def's Mot. for Summ. J., Stover Aff. ¶ 12-16).

2

Supp. 2d 525, 530 (D. Md. 2001); Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd, 676 F.2d 690 (4th Cir. 1982).

ii. Factual Discussion

On January 8, 2008, plaintiff was examined by a DOC medical provider. (Mem. in Supp. of Def's Mot. for Summ. J., Stover Aff. ¶ 6). That individual found plaintiff had suffered from lower back pain for the last three years but had a negative physical examination. (Id.). An MRI was requested subsequent to the examination. (Id.). On February 8, 2008, a physician provider refused plaintiff's request for an MRI because plaintiff had "a negative straight leg raise,[and] no weakness or sensory deficits in his lower extremities." (Id.).

On November 12, 2008, plaintiff was re-examined. (Id., Stover Aff. ¶ 7). Plaintiff complained of lower back pain radiating into his left leg. (Id.). An examination revealed that Plaintiff had a positive straight leg raise. (Id.). He was treated with Flexril and given a wheelchair. (Id.). A follow-up visit was scheduled for the next week. (Id.).

On November 21, 2008, plaintiff was again examined. (Id., Stover Aff. ¶ 8). He continued to complain of lower back pain and pain in his left leg. (Id.). Plaintiff was prescribed 800 mg of ibuprofen and the use of the wheelchair was discontinued. (Id.). Plaintiff's medical provider requested that plaintiff receive an MRI. (Id., Stover Aff. ¶8).

On December 3, 2008, the utilization review physician recommended a trial of steroids and physical therapy, and recommended that the request for an MRI be resubmitted if the above was not successful. (Id., Stover Aff. ¶ 9). Plaintiff began the recommended treatment on December 5, 2008. (Id., Stover Aff. ¶ 10). Plaintiff completed the recommended treatment and was examined by his medical provider on March 25, 2009. The medical provider requested

3

another MRI because Plaintiff was still experiencing pain in his lower back and left leg. (Id., Stover Aff. ¶ 11).

On April 1, 2009, approval was given for plaintiff to receive an MRI because he had failed to respond to the recommended treatment. (Id., Stover Aff. ¶ 12). The MRI showed spinal stenosis and bilateral narrowing of the neural foramen at the L5/S1 level. (Id., Stover Aff. ¶ 13). On May 28, 2009, utilization review approved a request that plaintiff be seen by a neurosurgeon. (Id., Stover Aff. ¶ 15) The neurosurgeon's recommendation that plaintiff receive surgical treatment was approved on July 27, 2009. (Id., Stover Aff. ¶¶ 15 and 16).

In Dr. Stover's expert opinion, plaintiff received careful and appropriate primary care management of the spinal stenosis and lumbar radiculopathy. (Id., Stover Aff. ¶17). Dr. Stover opinion is that plaintiff received timely and appropriate treatment. (Id.). Dr. Stover also explains in his opinion that spinal stenosis and lumbar radiculopathy can be treated by a variety of modalities, all of which have their relative benefits and risks. (Id.).

Dr. Stover continues his opinion by stating that the outcome of plaintiff's treatment would not likely have been altered by an earlier MRI. (Id., Stover Aff. ¶ 20). Surgical intervention carries considerable risk and it is good medical practice to do a trial of aggressive conservative management which was been shown to have favorable results. (Id.).

iii.  Legal Discussion

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even

a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[O]bduracy and wantonness, not inadvertence or error in good faith, . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "[T]o establish a claim of deliberate indifference to [a] medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

Here, the records shows that Collins received continued care for his back issues. The medical professionals considered different alternatives to surgery while examining Collins and considering his condition. To begin with a conservative approach to his lower back pain, does not amount to deliberate indifference. Rather, the record reflects a disagreement between medical professionals on the appropriate course of treatment. Such a disagreement does not reflect deliberate indifference. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Johnson v. Wright, 412 F.3d 398, 404 (2d Cir. 2005). The motion for summary judgment is granted.

5

iv. Conclusion

Defendant's motion for summary judgment is GRANTED and the Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 31 day of January 2012.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE